IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ALLEN COLLINS | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  19-4905 |
| | : | |
| D. B. OBERLANDER, *et al.* | : | |

## MEMORANDUM

KEARNEY, J.                                                          February 27, 2022

 Boyfriend and girlfriend drug dealers lost ten thousand dollars in drug money from their close friend who also sold drugs. The three met and the close friend ended up dead. The state charged the boyfriend and girlfriend with murdering the close friend as well as drug charges. The girlfriend plead before trial and pinned the blame for the murder on her boyfriend. The boyfriend's lawyer along with the boyfriend decided to focus their trial strategy on putting the murder weapon in the hands of his ex-girlfriend. The lawyer, without the express verbal or written consent of the boyfriend, told the jury his client is a drug dealer who owns illegal guns and a bad guy. The jury convicted the boyfriend on the murder charge as well as the drugs and gun offenses. The boyfriend lost his appeals and petitioned for post-conviction relief. His post-conviction relief counsel did not argue trial counsel violated the boyfriend's Sixth Amendment right to autonomy by conceding to the charges despite those issues being addressed in a 2004 United States Supreme Court opinion. The post-conviction court denied the boyfriend's petition. The boyfriend's lawyer on appeal then cited a more recent Sixth Amendment autonomy case to argue the trial counsel violated his client's Sixth Amendment right to autonomy for the first time on appeal. The Pennsylvania Superior Court addressed this Sixth Amendment autonomy issue and denied the claim.

The boyfriend now petitions for habeas relief arguing, among other things, the state court erred in not upholding his Sixth Amendment right to autonomy. Judge Strawbridge recommends we deny the petition. We agree with Judge Strawbridge as to denial but on different grounds. We find the boyfriend did not exhaust his Sixth Amendment autonomy claim at every level of the state court as required for habeas relief. We are also mindful the Superior Court reviewed his Sixth Amendment autonomy claim notwithstanding not being raised in the trial court. So, mindful of guidance from a note in a recent Court of Appeals' opinion, we address the merits and also find no basis to grant the habeas petition based upon the claims including the alleged denial of the Sixth Amendment right to autonomy. We deny the boyfriend's petition for habeas relief, find no basis for an evidentiary hearing, and no basis for a certificate of appealability.

## I.  Background

Richard Collins, Mariah Walton, and Artie Bradley sold heroin and other illegal drugs in 2014 and 2015.[1] Mr. Collins and Ms. Walton had a romantic relationship and Mr. Collins and Mr. Bradley were "like brothers."[2]  But Mr. Collins's and Ms. Walton's relationship with Mr. Bradley began to deteriorate when Mr. Collins and Ms. Walton returned from a trip in early February 2015 to find $10,000 worth of heroin money missing.[3] Mr. Collins confronted Mr. Bradley, found his excuses about the missing money unpersuasive, and told him he would need to repay the money back through future drug sales.[4]

About a month later, on March 20, 2015, police dispatched an ambulance to an intersection after reports of gunshots to treat an unresponsive person.[5] The ambulance team pronounced the victim – Mr. Bradley – dead at the scene.[6] Mr. Bradley suffered seven gunshots wounds to the chest and abdomen.[7]

***The Commonwealth charges murder, drugs, and gun offenses.***

Police arrested Mr. Collins and Ms. Walton on April 14, 2015 with probable cause of murdering Mr. Bradley.[8] The Commonwealth charged Mr. Collins and Ms. Walton with: murder in the first degree; criminal conspiracy to commit murder in the first degree; possession of a controlled substance with intent to distribute; criminal conspiracy to manufacture, delivery or possess a controlled substance with intent to deliver; and three counts of possession, use, control, sale or transfer of a firearm related to a .40 caliber, .45 caliber, and .380 caliber handgun.[9]

Ms. Walton, less than two weeks before Mr. Collins's scheduled jury trial, pled guilty to: murder in the third degree; conspiracy to commit murder in the third degree; possession of a controlled substance with intent to distribute; criminal conspiracy to commit possession of a controlled substance with intent to deliver; simple assault; and conspiracy to commit a simple assault.[10]

### Mr. Collins's lawyer admits the drugs and gun offenses to the jury.

A four-day jury trial began on March 1, 2016 in the Court of Common Pleas of Montgomery County.[11] On the first day, Mr. Collins's counsel Attorney Paul A. Bauer, III put on the record Mr. Collins's "trial strategy[,]" outside the presence of the jury and prosecutor:[12]

**Q. (Attorney Bauer).** Mr. Collins, I asked the Judge to clear the courtroom, close the courtroom for a specific reason. I would like to put on the record about our trial strategy, and the fact that you and I have spoken about this, okay?

**A. (Mr. Collins).** Yes.

**Q.** But before I do, you understand that there may be some sort of Constitutional Right, that you have the right to have all of this in front of witnesses in an open courtroom. Are you okay with the fact that I asked the Court to close this courtroom and exclude the public and the District Attorney's Office so that we get an opportunity to directly talk to the Judge without anybody else hearing what we're talking about?

**A.** Yes.

**Q.** Okay, that being said, is it true that you and I have had an opportunity to review all of the evidence in this case?

**A.** Yes.

**Q.** And the trial strategy that I have I want to talk about. We are going to proceed with a trial strategy that Mariah Walton was the shooter in this case?

**A.** Yes.

**Q.** And as a result of proceeding under that strategy, we are going to have to essentially admit that you were at the scene of the murder?

**A.** Yes.

**Q.** And that there really, if the jury does not buy the fact that Mariah Walton was the shooter in this case, that by virtue of the fact that we're putting you at the scene, we are essentially making it that much easier for the jury to potentially convict; do you understand that?

**A.** Yes.

**Q.** All right. But you and I have looked at all other possible defenses, such as self-defense, diminished capacity. We have talked about what that means. We have talked about the lack of intentional – the lack of intent would reduce it from a first to a third degree. We talked about alibi defenses, and just generally reasonable doubt. We talked about all other defenses; is that accurate?

**A.** Yes.

**Q.** And that you agree with me that this is the best trial strategy, based upon all of the – what I determine to be overwhelming evidence that puts you at the scene of the murder?

**A.** Yes.

**Q.** Okay. And have I forced, threatened or coerced you in any way to proceeding with this trial strategy?

**A.** No.

**Q.** And are you doing this of your own free will?

**A.** Yes.

**Q.** And do you believe, based upon all of the evidence that we have talked about and looked at, that this is the best possible trial strategy for this case?

**A.** Yes.

**Q.** And do you believe that by proceeding in this manner, it gives you the best possible defense that you might have?

**A.** Yes.

**Q.** I'm going to ask you one other question about yesterday's ruling. You understand that I filed a motion *in limine* to preclude Mariah [Walton], but the Judge ruled against that; do you understand that?

**A.** Yes.

**Q.** I had thought about asking today, as a potential cautionary instruction or even a new motion, to have the Judge redact the portion of Mariah's statement pertaining to the guns. You and I talked about that?

**A.** Yes.

**Q.** And that was what I believed to be the most offensive part of Mariah's testimony, the fact that she had switched completely on that issue, and as you see, I asked multiple questions about that?

**A.** Right.

**Q.** So is it your agreement with me that if I asked the Court to do that, and I know that there would be an argument, but if the Court ultimately ruled in our favor and redacted that portion, it eliminates a lot of cross-examination that we have for Mariah Walton.

**A.** Right.

**Q.** And our goal is to say that the reason Mariah Walton knows about what gun it was is because she was the shooter?

**A.** Right.

**Q.** So by redacting that portion of the statement, it would actually hurt us at trial.

**A.** Right.

**Q.** And are you in agreement with that particular strategy as well?

**A.** Yes.

**Q.** And, again, has anybody forced, threatened or coerced you on that issue?

**A.** No.

**Q.** Are you satisfied with my decision to proceed with that strategy?

**A.** Yes.

**Attorney Bauer:** That's all the questions I have, Your Honor.

**The Honorable Wendy Demchick-Alloy:** All right. Sir, do you have any questions for me?

**Mr. Collins**: No ma'am.

Evidence introduced at trial including eyewitness testimony and cell phone records placed Mr. Collins near the scene of Mr. Bradley's murder with a gun.[13] Police also identified footprints near where they found Mr. Bradley's body and an expert identified the footprints as a particular

size and model of a Nike sneaker which Mr. Collins had owned and wore.[14] Ms. Walton testified, among other things, "I was a knowing participant [in] the murder of Artie Bradley. I knew [Mr. Collins] had a gun, and I knew he went there to get in a confrontation, and I not only watched him kill Artie Bradley, I drove him away from the crime scene and covered up for him."[15]

In his closing statement, consistent with his trial strategy, Attorney Bauer admitted the evidence put Mr. Collins at the scene of the murder:

> I'm not disputing that Mr. Collins was near that scene. I'm not disputing Mr. Collins was at Troy Holmes' house. That's not a dispute. It's not a crime to be at Mr. Holmes' house.[16]

Attorney Bauer also conceded Mr. Collins's guilt to the drug and gun charges during his closing statement:

> During my cross-examination, did I ever once suggest that my client, Mr. Collins, was not involved in a drug trade? Did I ever once suggest my client, as a result of that, didn't have access to guns? Now, again, not our burden to prove any evidence, but through my cross-examination questions, **I thought it was pretty clear, Mr. Collins is a drug dealer. Mr. Collins had guns.** Mr. Collins is a bad guy. I don't like Mr. Collins. But you know what? Because I don't like Mr. Collins, and because Mr. Collins is a drug dealer, and Mr. Collins had access to guns doesn't make him a murderer. It doesn't make the fact that he shot and killed Arie Bradley anymore of a fact.[17]
>
> .     .     .
>
> **The charges of the assault or the charges of the drug dealing, when you go back there, find him guilty of those charges. Find him guilty of those charges, because we didn't contest it**. That's the way the law works. They prove their case, that's the way the law works. We don't contest that, but we're here because of a murder. That's why we're here.[18]
>
> .     .     .
>
> Now, what do you know about Richard Collins? You know he's a drug deal, and you heard me cross-examine somebody that drug dealers are businesspersons. **It's an illegal business, and you're going to have the opportunity to convict him of possession with intent to deliver. You're going to have that opportunity when you get the jury sheet.**[19]
>
> .     .     .
>
> Now, mind you, I'm not asking you to go back and find [Mr. Collins] guilty of all the charges. I told you he was there when the assault, and **he's a drug dealer, and that on January 28th he was a drug dealer, we didn't contest it, and that he**

**possessed a .40 and he possessed a .45**. I don't want you to go back and think, oh, he's getting away with anything, because that's not the way this works. **The way this works, though, when they prove their case, you can convict him of something, and I suggest to you that they have proven their case with the gun charges and the assault and the drug charges**.[20]

The jury convicted Mr. Collins of first-degree murder, conspiracy to commit first degree murder, possession with intent to deliver a controlled substance (cocaine), and criminal conspiracy to possess a controlled substance with the intent to deliver.[21] The jury also found Mr. Collins possessed, used, controlled, sold, or transferred a firearm as to the .45 caliber handgun, the .40 caliber handgun, and the .380 caliber handgun.[22] The Commonwealth withdrew the gun charges after the jury returned its verdict.[23]

### Judge Demchick-Alloy sentences Mr. Collins.

Judge Demchick-Alloy sentenced Mr. Collins on May 31, 2016 to a term of life imprisonment for murder in the first degree plus a consecutive term of one and one-half to five years' imprisonment for the possession with intent to deliver drugs.[24] Judge Demchick-Alloy imposed concurrent sentences of ten to twenty years for the conspiracy offenses.[25]

### Mr. Collins appeals and seeks post-conviction relief.

Mr. Collins appealed his conviction to the Pennsylvania Superior Court.[26] He raised six claims challenging the sufficiency of the evidence, the weight of the evidence, and certain evidentiary rulings made by the trial court.[27] The Superior Court denied Mr. Collins's claims and affirmed his sentence.[28]

Mr. Collins *pro se* petitioned for post-conviction relief under Pennsylvania's Post-Conviction Relief Act on September 8, 2017.[29] Attorney John F. Walko, on Mr. Collins's behalf, filed an amended counseled petition on February 9, 2018 challenging: (1) the legality of Mr. Collins's sentence; and (2) the effectiveness of his trial counsel for, among other things, making

derogatory comments about Mr. Collins during closing argument.[30] Attorney Walko did not argue Attorney Bauer deprived Mr. Collins's right to autonomy under the Sixth Amendment. The post-conviction court found the evidence failed to show Attorney Bauer rendered ineffective assistance of counsel.[31] Attorney Bauer's closing remarks instead constituted "sound trial strategy" because "[i]n anticipation of the risk that the jurors would convict [Mr. Collins] because of his prior bad acts and gun ownership" Attorney Bauer "sought to draw the sting from that evidence in his closing argument and simultaneously remind the jurors that their verdict was to be based on evidence of guilt, not their personal dislike of [Mr. Collins]."[32] And "[b]ecause of the direct and indisputable evidence that [Mr. Collins] was guilty of the drug and firearm charges, [Attorney] Bauer conceded guilt as those; but not the murder, which was proven by circumstantial evidence and the testimony of [Ms.] Walton, who pled guilty[.]"[33] The post-conviction court described Attorney Bauer's strategy as "tactically sound because it maximized the credibility he and his client could preserve with the jurors[.]"[34] The post-conviction court dismissed Mr. Collins's petition without a hearing on June 22, 2018.[35]

Mr. Collins, again represented by Attorney Walko, appealed to the Pennsylvania Superior Court challenging: (1) the legality of his sentence of life imprisonment without a minimum parole date, and (2) the effectiveness of his trial counsel for making derogatory and incriminating statements toward and about Mr. Collins throughout his closing statement.[36]

But now in Superior Court, Mr. Collins began claiming Attorney Bauer violated his Sixth Amendment right to autonomy when he conceded Mr. Collins's guilt to the drug and gun charges during closing argument.[37] Mr. Collins's counsel argued "[t]he United States Supreme Court has recently held in *McCoy v. Louisiana* . . . that a defendant has the right under the Sixth Amendment of the United States Constitution to insist that his counsel refrain from admitting his guilt, even if

his counsel had a reasonable strategy for doing so[.]"[38] Since Mr. Collins never agreed to or conceded guilt, he argued "a new trial is warranted without the need to show any prejudice."[39]

The Superior Court did not agree with Mr. Collins's lawyer; it instead agreed with the post-conviction court and held statutory authorization existed for Mr. Collins's sentence.[40] The Superior Court also held the post-conviction court did not err when it found Attorney Bauer had a reasonable basis for commenting on Mr. Collins's character during his closing argument.[41] The Superior Court found no basis to disturb the post-conviction court's finding Attorney Bauer's decision to concede guilt to the drug and firearms charges constituted a "tactically sound" trial strategy.[42] The Superior Court considered and distinguished *McCoy v. Louisiana* where Mr. McCoy "adamantly objected" to his attorney conceding guilt during the guilt phase of his capital trial.[43] The Superior Court emphasized Mr. Collins, unlike Mr. McCoy, "consulted with trial counsel and agreed upon the best strategy for his case" and his on-the-record colloquy demonstrated his awareness of other possible defense strategies "but he opted to have trial counsel do everything possible to convince the jury that Ms. Walton actually shot the victim."[44]

The Superior Court affirmed the post-conviction court's denial of Mr. Collins's petition.[45] The Pennsylvania Supreme Court denied Mr. Collins's petition for allowance of appeal.[46]

### Mr. Collins seeks federal habeas relief.

Mr. Collins timely *pro se* petitioned for habeas relief.[47] He raises three grounds: (1) Attorney Bauer violated his Sixth Amendment right to autonomy by making derogatory and incriminating statements about him during closing arguments; (2) his sentence violates the Fourteenth Amendment due process of law because it lacks statutory authorization; and (3) the jury's verdict went against the weight of the evidence violating his Fifth and Fourteenth Amendment rights.[48] Mr. Collins, through Attorney Michael Wiseman, filed a counseled brief

providing additional support for his claim Attorney Bauer violated his Sixth Amendment right to autonomy when Attorney Bauer admitted Mr. Collins's guilt to all of the charges except the murder charge without Mr. Collins's consent during his closing statement.[49] Mr. Collins contends the Pennsylvania Superior Court unreasonably applied *McCoy* and made unreasonable determinations of fact. Mr. Collins argues the Superior Court's attempt to distinguish *McCoy* resulted in a decision contrary to, or involving an unreasonable application of, clearly established Federal law.[50] And he argues the Superior Court unreasonably applied *McCoy* to the facts because the on-the-record colloquy outlining Mr. Collins's trial strategy did not include Mr. Collins's consent to "such dramatic concessions of guilt[.]"[51]  So, according to Mr. Collins, the Superior Court's finding the colloquy constituted consent to concede guilt "is a factual finding that is utterly unsupported by the record."[52]

The Commonwealth opposes Mr. Collins's Petition and requests we dismiss it with prejudice.[53] We referred Mr. Collins's Petition to the Honorable David R. Strawbridge for a Report and Recommendation.[54]

### *Judge Strawbridge recommends we deny and dismiss the habeas petition.*

Judge Strawbridge issued a detailed Report recommending we deny and dismiss Mr. Collins's Petition.[55] Judge Strawbridge found Mr. Collins's first claim arguing his trial counsel violated his Sixth Amendment right to autonomy lacked merit. Judge Strawbridge found the state court reasonably concluded "[t]he contested remarks in trial counsel's closing argument amounted to a final effort to help advance the chosen defense strategy" and it "provided reasonable interpretations of Supreme Court precedent and of the facts when they rejected [Mr. Collins's] claim about his attorney's closing argument having violated his autonomy right."[56] Judge Strawbridge found Mr. Collins's second claim challenging the legality of his sentence procedurally

defaulted and explained Mr. Collins provided no reason for us to find cause to excuse the default and offered no evidence of his actual innocence to consider the merits of the claim.[57] Judge Strawbridge analyzed Mr. Collins's third claim arguing the jury's verdict went against the weight of the evidence and found it not cognizable under habeas review.[58] Judge Strawbridge found no basis to issue Mr. Collins a certificate of appealability.[59]

## II.   Analysis

Mr. Collins now objects to Judge Strawbridge's Report and Recommendation.[60] Mr. Collins objects to Judge Strawbridge's finding his Sixth Amendment claim lacked merit since "the state court . . . reasonably concluded [ ] 'the contested remarks in trial counsel's closing argument amounted to a final effort to help advance the chosen defense strategy.'"[61] Mr. Collins objects to this conclusion because it does not address: (1) whether trial counsel advised Mr. Collins he planned to concede guilt; (2) if Mr. Collins ever consented to concede guilt; and (3) the fact the colloquy did not contain any discussions of conceding guilt.[62] Mr. Collins also objects to Judge Strawbridge's finding Mr. Collins "has not made any proffer or provided any contemporaneous evidence that would support his position that counsel made this concession without his prior approval" because the state court never granted him a hearing and instead relied on the on-the-record colloquy.[63] Mr. Collins alternatively objects to Judge Strawbridge's recommendation we deny a certificate of appealability for his Sixth Amendment autonomy claim.[64] Mr. Collins did not object to Judge Strawbridge's findings his claim challenging his life sentence procedurally defaulted or his claim challenging the weight of the evidence is not cognizable under habeas review.

Before we may grant a habeas petition to a person in custody from a state court judgment, Congress, through the Antiterrorism and Effective Death Penalty Act of 1996, requires incarcerated persons "exhaust[] the remedies available in the courts of the State."[65] If we find the

claim has been adjudicated on the merits by the state court, we may grant a petition for habeas relief only if: "(1) the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[66] As the Supreme Court instructs, this is a "highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."[67]

We may designate a magistrate judge to make proposed findings and recommendations on habeas petitions.[68] Mr. Collins may then object to the recommendation and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."[69] We review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[70] Objections "merely rehash[ing] an argument presented to and considered by a magistrate judge are not entitled to *de novo* review."[71]

We overrule Mr. Collins's objections and find his claims lack merit. We accept Judge Strawbridge's Report and Recommendations in part. Following our careful review of the entire record, we adopt and approve Judge Strawbridge's Recommendations for grounds two and three of Mr. Collins's Petition: (ground two) the trial court imposed a life sentence without statutory authorization, and (ground three) his Fifth and Fourteenth Amendment rights were violated due to the "weight of the evidence."[72]

We reviewed *de novo* Mr. Collins's Sixth Amendment autonomy claim (ground one) following Mr. Collins's objections to Judge Strawbridge's Report and Recommendation. We cannot adopt Judge Strawbridge's findings as to Mr. Collins's Sixth Amendment autonomy claim. We find this claim unexhausted and procedurally defaulted. But the Superior Court decided Mr. Collins's Sixth Amendment autonomy claim on the merits, so we assess whether the Superior Court's denial of relief reflects an unreasonable application of Supreme Court precedent or arose from an unreasonable determination of the facts. We find this Sixth Amendment autonomy claim lacks merit precluding habeas relief.  Mr. Collins agrees the Superior Court decided this issue on the merits. We find no basis for an evidentiary hearing or a certificate of appealability.

### A.  Mr. Collins failed to exhaust his Sixth Amendment autonomy claim.

We may not consider the merits of Mr. Collins's habeas claim unless he fairly presented these arguments to the state trial and appellate courts. Mr. Collins must comply with the exhaustion requirement set by Congress in section 2254(b).[73] The exhaustion requirement "is grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law[.]'"[74] This requirement pragmatically recognizes "federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review."[75] While not a jurisdictional requirement, the exhaustion requirement creates a "strong presumption in favor of requiring [Mr. Collins] to pursue his available state remedies."[76]

Mr. Collins "fairly present" a claim to the state courts to exhaust the claim and allow our review.[77] "To 'fairly present' a claim, [Mr. Collins] must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."[78] "All claims that a petitioner in state custody attempts to present to a federal court for

habeas corpus review must have been fairly presented to *each level of the state courts*[.]"[79] Mr. Collins must "give the state courts *one full opportunity* to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process."[80] In Pennsylvania, this requirement means Mr. Collins "must have presented every federal constitutional claim raised in his habeas petition to the Court of Common Pleas and then the Superior Court either on direct or collateral appeal."[81]

Mindful we may not grant a habeas petition unless Mr. Collins exhausted his remedies in state court and consistent with our independent duty to examine whether a claim has been exhausted, we granted the parties leave to show cause last month as to how Mr. Collins exhausted his Sixth Amendment autonomy claim, and if he has not, whether he can adduce a basis for us to find cause and prejudice necessary to excuse the procedural default.[82] Mr. Collins responded he exhausted his autonomy claim by presenting it to the Pennsylvania Superior Court, which decided and denied the claim on its merits.[83] He offered no basis for us to find cause or prejudice if we found the claim unexhausted. The Commonwealth disagreed and argued Mr. Collins failed to properly exhaust his Sixth Amendment autonomy claim when he failed to present the claim to the post-conviction court.[84]

Mr. Collins never presented his Sixth Amendment autonomy claim to the Court of Common Pleas. He instead presented a Sixth Amendment ineffective assistance of counsel claim to the post-conviction court in his counseled amended petition: "[Mr. Collins's] trial counsel was ineffective for the following reasons . . . mak[ing] derogatory, incriminating comments toward and about [Mr. Collins], his own client, to the jury throughout his closing statement, including the statement: 'I thought it was pretty clear, Mr. Collins is a drug dealer. Mr. Collins had guns. Mr. Collins is a bad guy. I don't like Mr. Collins.'"[85] Nowhere in his amended post-conviction Petition

14

did Mr. Collins argue Attorney Bauer or the trial court violated his Sixth Amendment right to autonomy. Mr. Collins claims he presented to the post-conviction court "a combined claim of trial counsel ineffectiveness and [] *McCoy* error[,]" but he never challenged Attorney Bauer's conduct in his amended Petition based on *McCoy* because the United States Supreme Court had not decided *McCoy* until May 14, 2018 – three months after Mr. Collins's filed his amended petition.[86]

Mr. Collins appealed the post-conviction court's dismissal of his claims and presented the Superior Court with the same two questions: (1) whether Mr. Collins's sentence is illegal under Pennsylvania law; and (2) whether Attorney Bauer rendered ineffective assistance for making repeated derogatory, incriminating statements toward and about Mr. Collins throughout his closing statement.[87] Mr. Collins, for the first time, also raised his trial counsel conceding guilt to the drug and gun charges during closing argument violated his Sixth Amendment right to autonomy as held in *McCoy v. Louisiana*.[88] He argued this violation is a "structural error" not subject to harmless error review and the Superior Court must order a new trial.[89] The Superior Court affirmed the post-conviction court's denial of Mr. Collins's ineffective assistance of counsel claim on the merits and also considered his newly raised Sixth Amendment right to autonomy claim. Mr. Collins contends the Superior Court "unquestionably decided the autonomy claim" on the merits by distinguishing *McCoy* on its facts based on the on-the-record colloquy.[90]

Mr. Collins admits "he mistakenly couched the autonomy claim as sounding in ineffectiveness" but claims this "is not fatal for exhaustion purposes."[91] We disagree. Although Mr. Collins presented a Sixth Amendment *ineffective assistance of counsel claim* to both the Court of Common Pleas and the Superior Court, a Sixth Amendment ineffective assistance of counsel claim is separate and distinct from a Sixth Amendment autonomy claim.[92] The Sixth Amendment guarantees "in all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of

Counsel for his defence."[93] Our Supreme Court has maintained Mr. Collins has a Sixth Amendment right to effective assistance of counsel and articulates the standard for ineffective assistance of counsel in *Strickland v. Washington*.[94] To prove ineffective assistance of counsel, Mr. Collins would have to show: (1) "counsel's performance was deficient" meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) "the deficient performance prejudiced the defense."[95]

But today's analysis addresses a separate Sixth Amendment protection guaranteeing "a defendant's autonomy to decide certain aspects of their defense in criminal trials."[96] Distinct from an ineffective assistance of counsel claim, a "violation of [Mr. Collins's] Sixth Amendment-secured autonomy ranks as error of the kind [] decisions have called 'structural'; when present, such an error is not subject to harmless-error review."[97] Once counsel usurps "the defendant's right to make the fundamental choices about his own defense . . . the effects of the admission would be immeasurable" so a new trial is required without a need to show prejudice.[98]

No one disputes Mr. Collins presented an ineffective assistance of counsel claim. And no one disputes Mr. Collins did not present his Sixth Amendment *autonomy claim* to each level of the state court. The state court never had one full opportunity to review Mr. Collins's Sixth Amendment right to autonomy claim.

Mr. Collins failed to exhaust his Sixth Amendment autonomy claim because he did not present it to the state trial court.

**B.  Mr. Collins fails to demonstrate cause or prejudice to excuse his defaulted claim.**

We must find Mr. Collins procedurally defaulted because he failed to properly present a Sixth Amendment autonomy claim to the state post-conviction court.[99] We cannot review a defaulted claim unless Mr. Collins can show "cause for the default and actual prejudice as a result

of the alleged violation of federal law, or [unless he] demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."[100] To establish cause, Mr. Collins must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" in the presentation of the claim to the state court.[101] If Mr. Collins can show cause, he must then prove prejudice resulted. To establish prejudice, Mr. Collins must show "not merely [ ] the errors at . . . trial created a *possibility* of prejudice, but [ ] they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[102] The "miscarriage of justice" exception requires Mr. Collins come forward with new evidence of his actual innocence.[103]

Mr. Collins instead argues he exhausted his Sixth Amendment autonomy claim and offers no reason for us to excuse his procedural default. He does not offer evidence of actual innocence for us to consider the merits of this claim. Since we cannot find cause to excuse the default, and Mr. Collins presented no evidence of actual innocence, we ordinarily would not review this claim on the merits.

**a.  Mr. Collins's Sixth Amendment autonomy claim lacks merit.**

Even if we were to find Mr. Collins sufficiently presented his Sixth Amendment autonomy claim to the state court, although he only presented it to the Superior Court, Mr. Collins is not entitled to relief on his Sixth Amendment autonomy claim. Exhaustion requires Mr. Collins "present his federal habeas claims at all levels of state court adjudication."[104] But we are mindful the Pennsylvania Superior Court did not find the lack of a trial record on the Sixth Amendment autonomy claim to impede its analysis.

So we face the unique scenario where the state appellate court reviewed an issue now before us but the state trial court did not. Our Court of Appeals has recognized "the purpose of the

exhaustion and procedural default rules . . . are intended to ensure that habeas petitioners meet the State's procedural requirements for presenting [their] federal claims" and to give the state courts the first opportunity to address those claims.[105] But the procedural default bar is not intended "to impose additional procedural burdens that go beyond those required by the state courts themselves."[106] Relying on this rationale, our Court of Appeals six years ago in *Wilkerson v. Superintendent Fayette SCI* reviewed a claim only presented to the Superior Court (like Mr. Collins) since "the state appellate court addressed [Mr.] Wilkerson's merger claim on the merits, irrespective of his failure to raise it in the trial court, our focus for federal habeas purposes is on the decision of the appellate court."[107]

Like in *Wilkerson*, the Pennsylvania Superior Court addressed Mr. Collins's Sixth Amendment autonomy claim on the merits.[108] We will do so as well consistent with our Court of Appeals guidance in *Wilkerson*. We will review Mr. Collins's Sixth Amendment autonomy claim.

The Superior Court, in affirming the trial court's denial of Mr. Collins's post-conviction relief claim, considered and distinguished *McCoy v. Louisiana*.[109] We begin with understanding *McCoy*. In *McCoy*, Mr. McCoy's attorney conceded Mr. McCoy committed three murders during the guilt phase of his capital trial.[110] But Mr. McCoy "vociferously insisted" he did not engage in the charged acts and "adamantly objected" to any admission of guilt.[111] Mr. McCoy told his counsel "not to make that concession," and counsel knew of Mr. McCoy's "complet[e] oppos[ition] to [counsel] telling the jury that [he] was guilty of killing the three victims[.]"[112] The United States Supreme Court in *McCoy* held "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."[113]

After correctly summarizing the Supreme Court's holding in *McCoy*, the Pennsylvania Superior Court emphasized Mr. Collins, unlike Mr. McCoy, "consulted with trial counsel and agreed upon the best strategy for his case" and his on-the-record colloquy demonstrated his awareness of other possible defense strategies but "he opted to have trial counsel do everything possible to convince the jury that Ms. Walton actually shot the victim."[114]

Mr. Collins contends: (1) the Pennsylvania Superior Court's attempt to distinguish *McCoy* resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; and (2) the Superior Court unreasonably applied *McCoy* to the facts because the colloquy did not include Mr. Collins's consent to "such dramatic concessions of guilt" so "its finding that the colloquy constituted consent to" the concessions of guilt "is a factual finding that is utterly unsupported by the record."[115]

### i. The Superior Court's ruling is not contrary to Federal law or objectively unreasonable.

Congress provides we shall not grant a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [ ] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"[116] "[C]learly established Federal law" under section 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[117] A state court acts "contrary to" clearly established Federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[118] A state court "unreasonably appli[es]" clearly established Federal law if it engages in an "objectively unreasonable" application of the correct governing legal rule to the facts.[119]

We may not grant habeas relief unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[120] This is meant to be a difficult standard to meet.[121] Congress "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[122] We "may not issue the writ simply because [we] conclude[] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."[123] We ask not whether "the state court's determination was incorrect but whether th[e] determination was unreasonable – a substantially higher threshold."[124] If there are reasonable arguments on both sides, we cannot grant habeas relief.[125]

The Sixth Amendment guarantees Mr. Collins autonomy to decide certain aspects of his defense in criminal trials.[126] The Supreme Court has recognized certain fundamental decisions are reserved to the client including whether to "plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."[127] The denial of this right constitutes a structural error and is not subject to harmless-error review.[128] But "[t]rial management is the lawyer's province" so  "[c]ounsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'"[129]

The Superior Court addressed *McCoy* without the benefit of the trial court's review. But the Superior Court also had the benefit of guidance from the United States Supreme Court in *Florida v. Nixon*, decided more than ten years before *McCoy,* where the accused did not say anything while his lawyer conceded guilt. The United States Supreme Court considered whether the Sixth Amendment barred Mr. Nixon's counsel from conceding Mr. Nixon's guilt at trial "when [Mr. Nixon], informed by counsel, neither consent[ed] nor object[ed]" to admitting guilt.[130] The

state charged Mr. Nixon with murder and had "overwhelming evidence" Mr. Nixon had committed the murder.[131] Mr. Nixon's counsel concluded the best strategy for Mr. Nixon to avoid the death penalty involved conceding guilt to the murder during the guilt phase of his capital trial so he could preserve Mr. Nixon's credibility in urging leniency during the penalty phase.[132] His attorney attempted to explain this strategy to Mr. Nixon, but Mr. Nixon never verbally approved or protested the proposed strategy.[133] Mr. Nixon's attorney conceded Mr. Nixon's guilt to the murder in both his opening and closing statements at the guilt phase of trial, but asked the jury to focus on the penalty phase and spare Mr. Nixon's life.[134] The jury found Mr. Nixon guilty and recommended he be sentenced to death.[135] The trial court imposed the death penalty.[136]

The Supreme Court in *Nixon* twenty-one years ago acknowledged Mr. Nixon has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."[137] And "[d]efense counsel undoubtedly has a duty to discuss potential strategies with [Mr. Nixon][.]"[138] But "when a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course."[139] So the Supreme Court held "counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent" where "counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive."[140]

In *McCoy*, the Supreme Court held Mr. McCoy had "the right to insist [] counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers [Mr. McCoy] the best chance to avoid the death penalty."[141] The Supreme Court recognized, unlike in *Nixon*, Mr. McCoy "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt."[142] But the trial court permitted Mr. McCoy's

counsel, at the guilt phase of the capital trial, to tell the jury Mr. McCoy "committed three murders . . . [H]e's guilty."[143] The jury returned three death verdicts.[144] The Supreme Court held "admission of [Mr.] McCoy's guilt despite [Mr.] McCoy's insistent objections was incompatible with the Sixth Amendment."[145] The Supreme Court reasoned "[w]hen a client expressly asserts that the objective of '*his* defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt."[146]

The Supreme Court in *McCoy* distinguished *Nixon* because Mr. Nixon waited until after trial to complain about the admission of guilt where Mr. McCoy opposed his counsel conceding guilt "at every opportunity, before and during trial, both in conference with his lawyer and in open court."[147] So the Supreme Court held "[t]he trial court's allowance of [counsel's] admission of [Mr.] McCoy's guilt despite [Mr.] McCoy's insistent objections was incompatible with the Sixth Amendment" and ordered a new trial.[148]

Mr. Collins in his Petition contends he never consented to Attorney Bauer conceding guilt to the gun and drug charges in his closing statement.[149] He argues the Superior Court's attempt to distinguish *McCoy* amounts to an unreasonable application of, and contrary to, Supreme Court precedent because it "misapprehended the type of consent that was required in order for counsel to make such dramatic concessions of guilt."[150]

The Superior Court's decision does not reflect error, constitutional or otherwise, and it is not contrary to any clearly established Federal law, nor does it unreasonably apply clearly established Federal law. The Superior Court considered *McCoy* and fully assessed its effect on Mr. Collins's claim. Neither the post-conviction court nor the Superior Court held a hearing on Mr. Collins's claims. But the Superior Court considered the whole record including the on-the-record colloquy where Attorney Bauer outlined the defense's trial strategy. In *McCoy*, the Supreme Court

held Mr. McCoy deserved a new trial once he insisted he did not want to admit guilt, explaining "[o]nce [Mr. McCoy] communicated that to court and counsel, strenuously objecting to [counsel]'s proposed strategy, a concession of guilt should have been off the table."[151]

We are not in the *McCoy* situation; we have no evidence Mr. Collins ever objected—much less "strenuously" objected—to Attorney Bauer conceding guilt to the gun and drug charges at the pretrial hearing or at trial. Mr. Collins, like Mr. Nixon, only expressed dissatisfaction with trial counsel after the jury convicted him of all counts when he moved for post-conviction relief and then only raised the autonomy issue well known to the Bar since the Supreme Court's 2004 decision in *Nixon* while on appeal.

The Superior Court found *McCoy* distinguishable because Mr. Collins agreed with Attorney Bauer on the best strategy for his case—to "do everything possible to convince the jury that Ms. Walton actually shot the victim."[152] The Superior Court found the contested remarks in Attorney Bauer's closing "amounted to a final effort to help advance the chosen defense strategy."[153] The Superior Court's ruling is not "contrary to" *McCoy* or *Nixon* or "objectively unreasonable."[154]

Although we may have evaluated Mr. Collins's Sixth Amendment claim differently than the Superior Court, the question before us is not whether the Superior Court came to the right decision in our judgment, but whether it came to a reasonable decision. And as Judge Strawbridge observed, "this case is between *Nixon* and *McCoy*."[155] We agree. Mr. Collins's Sixth Amendment claim falls in the grey area between *Nixon* and *McCoy*. And we cannot grant habeas relief when there are reasonable arguments on both sides.[156] The Superior Court reasonably concluded Attorney Bauer did not violate Mr. Collins's Sixth Amendment right to autonomy. The Superior Court correctly summarized the law and reasonably applied the facts of *McCoy* to Mr. Collins's

23

claim. Mr. Collins failed to show the Superior Court's ruling on his Sixth Amendment autonomy claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[157]

Even if Mr. Collins never explicitly agreed with Attorney Bauer's decision to concede guilt, Attorney Bauer's strategic decision to concede guilt to two lesser charges in his closing argument "is not impeded by any blanket rule demanding the defendant's explicit consent."[158] We must defer to the state court decision and deny habeas relief under section 2254(d)(1).

### ii. The Superior Court based its decision on a reasonable determination of the facts considering the evidence presented.

Congress separately provides we shall not grant a writ of habeas corpus if the state court decided the claim on the merits unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[159] "[A] determination of a factual issue made by a State court shall be presumed to be correct" and Mr. Collins "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[160]

Mr. Collins argues the Superior Court's finding the on-the-record colloquy constituted consent to the drug and gun charges "is a factual finding utterly unsupported by the record."[161] He contends the colloquy "does not carry the load required by *McCoy*."[162] We disagree. The colloquy demonstrates Mr. Collins agreed to a trial strategy which sought to identify Ms. Walton as the person who shot Mr. Bradley. Mr. Collins acknowledged he would essentially have to admit his presence at the scene of the murder but knew of "all other possible defenses" and reviewed all of the evidence but agreed this "is the best trial strategy[.]"[163] There is nothing in the record to suggest Mr. Collins disagreed with Attorney Bauer's trial strategy of conceding guilt to the gun and drug charges. Instead, as the Superior Court reasonably determined based on the facts, Attorney Bauer

conceded guilt to the gun and drug charges to enhance Mr. Collins's credibility with the jury in order to "do everything possible to convince the jury that Ms. Walton actually shot the victim."[164] We are faced with facts distinct from *McCoy* – as acknowledged by the Superior Court – because there is nothing to indicate Mr. Collins disagreed with the trial strategy's ultimate goal of proving Ms. Walton shot Mr. Bradley. To implement this strategy, the Superior Court held Attorney Bauer's closing argument did not violate Mr. Collins's Sixth Amendment right to autonomy but instead amounted to a final effort to maximize Mr. Collins's credibility so he could convince the jury Mr. Collins did not shoot Mr. Bradley.

Considering the evidence presented to the state court, the Superior Court did not base its decision on an unreasonable determination of the facts. We presume the state court's factual determinations are correct, and Mr. Collins failed to rebut the presumption of correctness by clear and convincing evidence.

**b. We deny Mr. Collins's request for an evidentiary hearing.**

Mr. Collins contends the on-the-record colloquy "speaks for itself" and he never discussed or acquiesced to concede guilt on the drug and gun charges.[165] But he requested an evidentiary hearing should there be any doubt about the extent of what Mr. Collins and Attorney Bauer discussed.[166] Mr. Collins requested a hearing when he petitioned for post-conviction relief under Pennsylvania's Post-Conviction Relief Act. But the post-conviction court dismissed Mr. Collins's petition without a hearing.[167]

Congress permits evidentiary hearings on habeas review, but only in a limited number of circumstances.[168] And our Supreme Court has cautioned "[a]lthough state prisoners may sometimes submit new evidence in federal court, [the Antiterrorism and Effective Death Penalty Act] statutory scheme is designed to strongly discourage them from doing so."[169] So "the standard

to expand the state-court record is a stringent one."[170] Where the state court reviewed the claim on the merits, our review "is highly circumscribed" and we "may review the claim based ***solely*** on the state-court record[,]" and Mr. Collins must demonstrate, under our Supreme Court's precedents, no "fairminded juris[t]" could have reached the same judgment as the Superior Court.[171]

Where the state court did not review the claim on the merits and Mr. Collins "failed to develop the factual basis of a claim in State court proceedings," we "shall not hold an evidentiary hearing on the claim" unless Mr. Collins satisfies one of two narrow exceptions—the claim must rely on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence"—*and* demonstrates the new evidence will establish his innocence "by clear and convincing evidence[.]"[172] In all but these extraordinary cases, Congress through the Antiterrorism and Effective Death Penalty Act "bars evidentiary hearings in federal habeas proceedings initiated by state prisoners."[173] And even if all of these requirements are satisfied, we are "not required to hold a hearing or take any evidence" because "[l]ike the decision to grant habeas relief itself, the decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case."[174]

Mr. Collins agrees the Superior Court reviewed his Sixth Amendment autonomy claim on its merits: "While [Mr. Collins] certainly disagrees with the Superior Court's conclusion, it unquestionably decided the autonomy claim."[175] So our review "is highly circumscribed" and we "may review the claim based solely on the state-court record."[176]

We deny Mr. Collins's request for an evidentiary hearing on his Sixth Amendment autonomy claim.

### c.   We deny a certificate of appealability.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[177] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[178] Mr. Collins "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[179]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Collins's claims because they are defaulted, meritless, or not cognizable under habeas review.

## III.   Conclusion

We reviewed *de novo* Mr. Collins's Sixth Amendment autonomy claim following his detailed objections to Judge Strawbridge's Report and Recommendation. We do not adopt Judge Strawbridge's findings in part as to Mr. Collins's Sixth Amendment claim after finding the claim unexhausted and procedurally defaulted. But after reviewing the claim on the merits because the Superior Court decided the Sixth Amendment autonomy claim on the merits, we found, consistent with Judge Strawbridge's Report and Recommendation, the claim lacked merit precluding habeas relief.

We adopt and approve Judge Strawbridge's Recommendations to deny Mr. Collins's claims the trial court imposed a life sentence without statutory authorization and the state court violated his Fifth and Fourteenth Amendment rights due to the weight of the evidence.

We find no basis for an evidentiary hearing or a certificate of appealability.

[1] *Com. v. Collins*, No. 3249-2016, 2017 WL 2805178, at *1 (Pa. Super. Ct. June 28, 2017). We base our analysis on the trial court's summary of the evidence. We may not revisit or alter the facts adduced at trial. We also extensively reviewed the state court record provided by the Montgomery County Court of Common Pleas. *See* ECF Doc. No. 18.

[2] *Collins*, 2017 WL 2805178, at *1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See Com v. Collins*, CP-46-CR-0004658-2015 (Mont. Cnty. Com. Pl.); *Com v. Walton*, CP-46-CR-0004659-2015 (Mont. Cnty. Com. Pl.).

[9] *Com. v. Collins*, No. 2043-2018, 2019 WL 1770643, at *2 (Pa. Super. Ct. Apr. 22, 2019); ECF Doc. No. 18-83 at 78–80 (N.T. 3/4/16 at 77–81).

[10] *Collins*, 2017 WL 2805178, at *3.

[11] *Id.* at *2.

[12] ECF Doc. No. 18-81 at 6–11 (N.T. 3/1/16 at 3–8).

[13] *See* ECF Doc. Nos. 18-80; 18-81; 18-82; 18-83.

[14] ECF Doc. No. 18-80 at 109–19 (N.T. 3/2/16 at 106–16).

[15] *Collins*, 2017 WL 2805178, at *1; ECF Doc. No. 18-81 at 147 (N.T. 3/1/16 at 144).

[16] ECF Doc. No. 18-82 at 169–70 (N.T. 3/3/16 at 166–67).

[17] *Id.* at 165 (N.T. 3/3/16 at 162) (emphasis added).

[18] *Id.* at 169 (N.T. 3/3/16 at 166) (emphasis added).

[19] *Id.* at 181 (N.T. 3/3/16 at 178) (emphasis added).

[20] *Id.* at 187–88 (N.T. 3/3/16 at 184–85).

[21] *Collins*, 2017 WL 2805178, at *1; *see also Collins*, CP-46-CR-0004658-2015 (Mont. Cnty. Com. Pl.).

[22] ECF Doc. No. 18-83 at 78–81 (N.T. 3/4/16 at 77–81).

[23] *Id.* at 85 (N.T. 3/4/16 at 84).

[24] *Collins*, 2019 WL 1770643, at *4; *Collins*, CP-46-CR-0004658-2015 (Mont. Cnty. Com. Pl.).

[25] *Collins*, CP-46-CR-0004658-2015 (Mont. Cnty. Com. Pl.).

[26] *Collins*, 2017 WL 2805178, at *2.

[27] *Id.* at *2.

[28] *Id.* at *10.

[29] *Collins*, 2019 WL 1770643, at *4.

[30] *Id.* Mr. Collins also challenged the effectiveness of his trial counsel for failing to provide an opening statement, discuss potential witnesses to introduce in Mr. Collins's defense, and object to the Commonwealth's improper use of preemptory strikes. *See* ECF Doc. No. 40 at 10–11.

[31] ECF Doc. No. 2 at 46–50.

[32] *Id.*

[33] *Id.* at 49–50.

[34] *Id.*

[35] *Collins*, 2019 WL 1770643, at *4.

[36] *Id.* at *5.

[37] *See* Appellant's Br., No. 2043-2018, 2018 WL 8332622, at *17–22 (Oct. 3, 2018).

[38] *Id.* at *19.

[39] *Id.*

[40] *Collins*, 2019 WL 1770643, at *6.

[41] *Id.* *8.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45]*Id.*

[46] *Com. v. Collins*, 655 Pa. 429, 218 A.3d 394 (2019).

[47] ECF Doc. No. 2.

[48] *Id*. at 5–23.

[49] ECF Doc. No. 23.

[50] *Id*. at 11.

[51] *Id*.

[52] *Id*.

[53] ECF Doc. No. 32.

[54] ECF Doc. No. 9.

[55] ECF Doc. No. 34.

[56] *Id*. at 22–23.

[57] *Id*. at 23–24.

[58] *Id*. at 24–26.

[59] *Id*. at 26.

[60] ECF Doc. No. 37.

[61] *Id*. at 9 (quoting ECF Doc. No. 34 at 22).

[62] *Id*. at 9–10.

[63] *Id*. at 10 (quoting ECF Doc. No. 34 at 22).

[64] *Id*. at 12–14.

[65] 28 U.S.C. § 2254(b)(1)(A).

[66] *Terry v. Ramson*, No. 20-3521, 2021 WL 1394306, at *2 (E.D. Pa. Mar. 15, 2021), *report and recommendation adopted*, No. 20-3521, 2021 WL 1387666 (E.D. Pa. Apr. 13, 2021) (quoting 28 U.S.C. § 2254(d)(1)–(2)) (internal quotations omitted)).

[67] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

[68] *See* 28 U.S.C. § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1.

[69] E.D. Pa. Civ. R. 72.1.IV(b).

[70] 28 U.S.C. § 636(b)(1).

[71] *Rodirequez v. SCI-Mercer*, No. 17-4294, 2019 WL 1559561, at *4 (E.D. Pa. Apr. 9, 2019) (internal citations omitted) (emphasis added).

[72] ECF Doc. No. 34 at 23–26.

[73] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[74] *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

[75] *Id*. (quoting *Rose*, 455 U.S. at 519).

[76] *Id*. (internal citations omitted).

[77] *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan*, 526 U.S. at 844–45).

[78] *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (internal citations omitted).

[79] *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (internal citations omitted) (emphasis added).

[80] *O'Sullivan*, 526 U.S. at 845 (emphasis added).

[81] *Cool v. Att'y Gen. of PA*, No. 19-145, 2022 WL 1471015, at *6 (W.D. Pa. May 10, 2022) (citing *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004)); *see also Lugo v. Superintendent, Coal Twp*., No. 20-2281, 2022 WL 10676552, at *6 (E.D. Pa. Aug. 18, 2022), *report and recommendation adopted*, No. 20-2281, 2022 WL 10584637 (E.D. Pa. Oct. 18, 2022) ("State law and federal exhaustion jurisprudence require that a claim be presented ***first to the PCRA Court and then to the Pennsylvania Superior Court*** in order to provide the state court with the 'one complete round of the State's established appellate review process' that is required.") (emphasis added).

[82] ECF Doc. No. 38.

[83] ECF Doc. No. 39.

[84] ECF Doc. No. 40.

[85] *Id*. at 10–11.

[86] ECF Doc. No. 23 at 10.

[87] Appellant's Br., 2018 WL 8332622, at *4.

[88] *Id*. at *17–22.

[89] *Id*. at *19–20.

[90] ECF Doc. No. 39 at 4–5.

[91] *Id*. at 6.

[92] *See Kellogg-Roe v. Gerry,* 19 F.4th 21, 26 (1st Cir. 2021); *United States v. Rosemond*, 958 F.3d 111, 120 (2d Cir. 2020) ("[A] defendant in a criminal case has a 'protected autonomy right' – that is, the 'Sixth Amendment-secured autonomy' – 'to make fundamental choices about his own defense,' including whether to persist in maintaining his innocence even in the face of overwhelming evidence of his guilt." (quoting *McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018))).

[93] U.S. Const. amend. VI.

[94] *Strickland v. Washington*, 466 U.S. 668, 685 (1984).

[95] *Id*. at 687.

[96] *See Kellogg-Roe,* 19 F.4th at 26 ("[D]efendants have a Sixth Amendment right to effective assistance of counsel and articulated the standard for ineffective assistance of counsel claims . . . [s]eparately, the Sixth Amendment also guarantees a defendant's autonomy to decide certain aspects of their defense in criminal trials.") (internal citations omitted).

[97] *McCoy*, 138 S. Ct. at 1511.

[98] *Id*. at 1511–12.
[99] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[100] *Id*.

[101] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[102] *Id*. at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[103] *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

[104] *Washington v. Smith*, No. 18-3327, 2019 WL 3272028, at *5 (E.D. Pa. May 22, 2019), *report and recommendation adopted*, No. 18-3327, 2019 WL 3252952 (E.D. Pa. July 18, 2019).

[105] *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 229, n.4 (3d Cir. 2017) (internal citations omitted) (cleaned up).

[106] *Id*.

[107] *Id*.

[108] *See Johnson v. Williams,* 568 U.S. 289, 298 (2013) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)).

[109] *Collins*, 2019 WL 1770643, at *8.

[110] *McCoy*, 138 S. Ct. at 1505–06.

[111] *Id.* at 1505.

[112] *Id.* at 1506.

[113] *Id.* at 1505.

[114] *Collins*, 2019 WL 1770643, at *8.

[115] ECF Doc. No. 23 at 11.

[116] 28 U.S.C. § 2254(d)(1).

[117] *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal citations omitted).

[118] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[119] *White v. Woodall*, 572 U.S. 415, 425–27 (2014).

[120] *Harrington*, 562 U.S. at 102.

[121] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[122] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted).

[123] *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

[124] *Schriro v. Landrisan*, 550 U.S. 465, 473 (2007).

[125] *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017).

[126] *McCoy*, 138 S. Ct. at 1508.

[127] *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

[128] *McCoy*, 138 S. Ct. at 1511.

[129] *Id.* at 1508 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)).

[130] *Florida v. Nixon*, 543 U.S. 175, 178 (2004).

[131] *Id.* at 180.

[132] *Id.* at 181.

[133] *Id.*

[134] *Id.* at 183–84.

[135] *Id.* at 184.

[136] *Id.*

[137] *Id.* at 187.

[138] *Id.* at 178.

[139] *Id.*

[140] *Id.* at 192.

[141] *McCoy*, 138 S. Ct. at 1505.

[142] *Id.*

[143] *Id.*

[144] *Id.* at 1507.

[145] *Id.* 1512.

[146] *Id.* at 1509 (quoting U.S. Const. amend. VI).

[147] *Id.*

[148] *Id.* at 1512.

[149] ECF Doc. No. 23 at 9–10.

[150] *Id.* at 11.

[151] *McCoy*, 138 S. Ct. at 1512.

[152] *Collins*, 2019 WL 1770643, at *8.

[153] *Id.*

[154] *White*, 572 U.S. at 425–27.

[155] ECF Doc. No. 34 at 20.

[156] *Virginia*, 137 S. Ct. at 1728.

[157] *Harrington*, 562 U.S. at 103.

[158] *Nixon*, 543 U.S. at 192.

[159] 28 U.S.C. § 2254(d)(2).

[160] 28 U.S.C. § 2254(e)(1).

[161] ECF Doc. No. 23 at 11.

[162] *Id*.

[163] ECF Doc. No. 18-81 at 6–11 (N.T. 3/1/16 at 3–8).

[164] *Collins*, 2019 WL 1770643, at *8.

[165] ECF Doc. No. 23 at 12.

[166] *Id*.

[167] *Collins*, 2019 WL 1770643, at *4.

[168] *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)).

[169] *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).

[170] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022).

[171] *Id*. at 1732 (citing *Cullen*, 563 U.S. at 180) (cleaned up) (emphasis added).

[172] *Id*. at 1728 (internal citations omitted); *see also* 28 U.S.C. § 2254(e)(2)(A).

[173] *Id*. (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

[174] *Id*. at 1734.

[175] ECF Doc. No. 39 at 5.

[176] *Shinn*, 142 S. Ct. at 1732 (citing *Cullen*, 563 U.S. at 180).

[177] 28 U.S.C. § 2253(c)(1)(A).

[178] 28 U.S.C. § 2253(c)(2).

[179] *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).